**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DE'SHANDRA JOHNSON-BANKS,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CASE NO. _____** |
| | § | |
| **GENERAL ELECTRIC COMPANY,** | § | |
| Defendant. | § | |
| | § | **JURY TRIAL DEMANDED** |
| | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**DE'SHANDRA JOHNSON-BANKS ("DE'SHANDRA")**, Plaintiff in the above numbered and styled cause, files her Original Complaint complaining of **GENERAL ELECTRIC COMPANY,** Defendant herein, and in support thereof shows this Court as follows:

1.　　This is a suit in law and in equity, authorized and instituted pursuant to Section 1981 of the Civil Rights Acts of 1866, 42 U.S.C. §1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"). The jurisdiction of this Court is invoked to secure the protection of and redress the deprivation of rights secured by these laws protecting people such as the Plaintiff from employment discrimination, a hostile work environment, non-promotion and termination, as well as from retaliation for taking protected medical leave and opposing such unlawful practices, based on race/color and gender/sex because Plaintiff is African-American/Black Female. This Court's

supplemental jurisdiction is invoked as to the state law claims herein.

**Venue**

2.    Venue is proper in the U.S. District Court for the Southern District of Texas Houston Division.  A substantial part, if not all, of the cause of action accrued or arose in the Southern District of Texas.  Defendant maintains sufficient business contacts within the counties comprising the Houston Division. Furthermore, the Plaintiff resided within the Houston Division during the pertinent time period in question.

**Parties**

3.    De'Shandra Johnson-Banks is an African American United States citizen and was a Texas resident during the time period in question.  At all times material hereto, De'Shandra Johnson-Banks was an employee of Defendant, as understood and defined by Section 1981 and Title VII.

4.    General Electric Company is a corporation.  It may be served with this lawsuit by serving its registered agent for service of process, CT Corporation System, 1999 Bryan St, STE. 900, Dallas, TX 75201. At all times material hereto, Defendant was De'Shandra Johnson-Banks' employer, as understood and defined by Section 1981 and Title VII.

**Facts**[1]

5.      De'Shandra began her employment with Defendant on or about March 2014 as a Human Resources Manager.

6.      On or about September 11, 2015, Steve Kuring (Caucasian) told De'Shandra that he was upset with her and became belligerent as he stated to her "who the hell did you think I was girl". De'Shandra was completely taken back and said "excuse me, I don't believe I heard you correctly". Mr. Kuring immediately responded and said "little girl, I'm not playing with you, I run shit around here, do you understand girl, because I'm not playing with your ass"? De'Shandra then asked him if it would be alright if she called him later, directly, to discuss what the real issues were. Mr. Kuring replied, "Whatever you need to say to me, you can say it now in front of Steve DuFort. There is no need to waste my time by calling me later because nothing is going to change. You need to go through Steve before communicating with me since he is your manager".  De'Shandra explained that she wasn't aware that Steve DuFort was her manager and asked when that was decided? Mr. Kuring then responded "he is your manager – period, and he was the one making this decision so live with it or leave". De'Shandra told Steve DuFort (Caucasian) that this is not the way you treat someone if you are trying to get them to be a part of your team and that she wouldn't treat her dog this way. De'Shandra also told Mr. DuFort that she would contact legal if Mr. Kuring ever belittled, bullied, or made anymore racist comments towards her again. Mr. DuFort then

---

1  These facts are by no means exhaustive.

told De'Shandra, "do you know who Steve Kuring is, this is the word of a little black girl who has been with GE for a short period of time vs. Kuring who has been around for years and is highly respected. See it's your word against his word, so who are they going to believe?" De'Shandra looked at Mr. DuFort and told him that he was racist. De'Shandra left Mr. DuFort's office in tears and immediately went to the local ombudsman, Jennifer Gant, to explain what had just taken place.

7.   On or about September 25, 2015, De'Shandra's client manager Quan Dinh (Asian) sent an email directly to Mr. Kuring regarding Mr. DuFort and his interaction with the Power Services leadership team. Mr. Dinh's stated that he was made aware that De'Shandra was his Human Resources Manager (HRM) for Power Services and that Mr. DuFort was aligned to Packaging. Mr. Dinh confronted Mr. Kuring regarding the confusion and concerns that were arising from both the Power Services hourly and salary leadership. Mr. Dinh then explained to Mr. Kuring that he was not happy with Mr. DuFort's performance. Mr. Dinh also told Mr. Kuring that he only wanted to deal with De'Shandra directly. Mr. Kuring later responded to Mr. Dinh, telling him that De'Shandra reported to Mr. DuFort and basically stated that was way it would be regardless. Mr. Dinh and Sarah Acker called De'Shandra, on three-way, and told her not to worry about Mr. Kuring's power struggle, and that De'Shandra needed to remain focused because within the next few days she would be reporting to the correct alignment of Power Services which was the client group De'Shandra had supported 100% anyways. At this point,

De'Shandra was announced to the Power Leadership team as the new Senior Site Human Resources Manager for Power Services.

8.     On or about September 25, 2015, De'Shandra sent an email out directly to Wendy Race (Caucasian) attempting to find out, again, who De'Shandra would be reporting to. De'Shandra wanted to ensure that she had her goals and objectives aligned to her new HR leadership, while still maintaining her direct client group goals and objectives.

9.     On or about September 26, 2015, Ms. Race responded to De'Shandra's email stating that Mr. Kuring would be reaching out to De'Shandra to discuss the last minute changes. Ms. Race went on to express that De'Shandra could expect to be doing the same thing De'Shandra was currently doing.

10.    On or about September 28, 2015, Mr. Kuring reached out to De'Shandra regarding the last-minute changes. Mr. Kuring contacted De'Shandra, via phone, and alleged that based on PGP Human Resources leadership's last minute decision, they decided to have De'Shandra support Power Services as their Human Resources Manager, but kept her aligned to PGP. At no point did Mr. Kuring provide any specifics regarding which HR person made this decision. When De'Shandra asked him if her client group was aware of these changes, Mr. Kuring said yes. However, De'Shandra found out later from Mr. Dinh and Ms. Acker that they were not informed of these changes and they had to inquire about them.

11.    On or about September 30, 2015, De'Shandra received notification that Gerald Hempel was filing for unemployment benefits. De'Shandra forwarded

the information to Mr. DuFort and advised him to complete this information since he was the HRM who actually released Mr. Hempel. Mr. DuFort then asked De'Shandra when she was going to find another job because obviously this won't work (referring to him and De'Shandra working together, and she reporting directly to him). Before walking out, Mr. DuFort turned to De'Shandra and reminded her that he was serious about De'Shandra finding another job.

12.    On or about October 1, 2015, De'Shandra was aligned directly to the PGP group, allegedly based on a last minute decision made by Mr. Kuring, who no longer supported PGP or Power Services as of that date. On his recorded call, Mr. Kuring stated that HR PGP made this decision. However, several leaders reported that this decision was made solely by Mr. Kuring.

13.    On or about October 6, 2015, Ms. Acker reached out to Mr. Kuring's client manager to inquire as to De'Shandra's alignment because Ms. Acker did not understand why De'Shandra was being set up to fail by being aligned to the wrong business unit. Tommy Mitchell told Ms. Acker that she needed to defer to Mr. Kuring because he was the one who made the decision regarding De'Shandra's alignment.

14.    On or about October 14, 2015, De'Shandra met with Mr. DuFort face to face in his office. Mr. DuFort asked De'Shandra if she had found another opportunity for employment yet and she advised him that she had not. De'Shandra told Mr. DuFort that she didn't understand why it was necessary when she didn't work directly with him. Mr. DuFort responded, "yeah, but

you still report to me, and I can easily find someone else." De'Shandra told Mr. DuFort that she would be registering for school, and Mr. DuFort told her before even asking anything about the actual school or classes that he wouldn't approve it. De'Shandra told Mr. DuFort that the Power Services leadership team didn't have a problem with this request. Mr. DuFort then stated he still had to approve it as De'Shandra's direct manager.

15.     On or about December 05, 2015, Mr. DuFort contacted De'Shandra on Saturday morning. The first thing out of Mr. DuFort's mouth was "Are you that incompetent?" and he then started yelling at De'Shandra. Mr. DuFort then stated that he would need to clean up De'Shandra's screw ups.  De'Shandra told Mr. DuFort that she followed proper protocol.

16.     On or about December 14, 2015, Ms. Acker announced to her entire staff that she was moving on to another GE business entity. Later this same day, Ms. Acker contacted De'Shandra, over the phone, and asked if De'Shandra could bring Mr. Dinh into De'Shandra's office. Ms. Acker then proceeded to advise Mr. Dinh and De'Shandra to be very careful because Wendy Race, Steve DuFort, and Steve Kuring all had it out for Mr. Dinh and De'Shandra. Ms. Acker stated if they valued their careers, then to please take notice to what she was telling them. Both Mr. Dinh and DeShandra are minorities.

17.     On or about January 12, 2016**,** Mr. DuFort told De'Shandra, that he was considering placing her on a PIP (Performance Improvement Plan). De'Shandra told him that he has attempted to sabotage her growth potential within GE by placing De'Shandra under a group that she was not adequately

aligned under and that he and Mr. Kuring have subjected her to a hostile work environment because neither he nor Mr. Kuring likes the fact that an African American women was able to succeed in spite of all the obstacles they placed for her. Mr. DuFort responded by saying that wasn't the case, and that De'Shandra needed to remember that he would be the one giving De'Shandra an evaluation that year and that since "I own you, you won't be going to any trainings for GE."

18.     On or about January 15, 2016, Mr**.** DuFort sent De'Shandra an email regarding her annual evaluation and the Continue/Consider feedback components. De'Shandra's old supervisor Rachel Hayes was also included in this email.

19.     On or about January 29, 2016, De'Shandra had a face to face meeting with both Ms. Hayes and Mr. DuFort in Mr. DuFort's office. During this meeting, De'Shandra provided both leaders with her ratings from all of De'Shandra's client managers. De'Shandra's ratings were very impressive per Ms. Hayes. Ms. Hayes went on to elaborate on all of the above and beyond things that De"Shandra contributed to the Human Resources team and how De'Shandra's performance was excellent. After Ms. Hayes left Mr. DuFort office, Mr. DuFort turned and told De'Shandra, that she must have forgot that he owned her within GE and would ensure that De'Shandra didn't move anywhere and that De'Shandra's career was over within GE. Mr. DuFort also told De'Shandra to make sure she canceled any trainings she was registered for

and to forget about going to school because he's not paying for it and that he wouldn't approve it.

20. On or about February 29, 2016, De'Shandra sent Dennis Healy an email informing him that she believed that she was a victim of race and gender discrimination while informing him about some of the hostile behavior she was being subjected to.

21. On or about March 23, 2016, De'Shandra reached out to Cheya Dunlap to express her concerns regarding alignment, denial of promotion, denial of training and the hostile working environment created by De'Shandra's all white male leadership. De'Shandra also expressed concerns with Ms. Dunlap that she believed Dennis Healy was attempting to cover-up the fact De'Shandra was being discriminated against by realigning Falondria Wilson (African American) *after* De'Shandra had complained of discrimination.

22. On or about April 7, 2016, an Ombudsman case was opened to address De'Shandra's complaint of gender and race discrimination. This investigation was created by Cheya Dunlap (Power Diversity and Inclusion Leader) after De'Shandra expressed to Ms. Dunlap her concerns and frustrations. Ms. Dunlap also believed that they were dealing with a compliance issue regarding De'Shandra's bonus and denial of promotion. The case manager assigned to De'Shandra's internal discrimination complaint was Teresa Garcia-Reyes.

23. On or about May 23, 2016, Kimberlee Guillaume came to the Houston Jacintoport Site to meet the Power Services leadership team. When De'Shandra met Ms. Guillaume, her first words to De'Shandra after she shook

De'Shandra's hand was "how can I help you and Quan, so that Steve Kuring doesn't ruin both of your careers here at GE"? De'Shandra was speechless and completely taken back by her comment.

24.     On or about June 9, 2016, Jim Vono announced that the Packaging side of GE was closing and relocating some of its operations. The only people who would stay at the Houston Jacintoport Site were the current leadership and their extended team. The entire Packaging team was laid off and the Power Services group would decrease its headcount by less than 10%. Mr. Vono stated that during the first quarter of 2017 Mr. Dinh would be the new site leader.

25.     On or about June 13, 2016, Mr. Dinh told Ms. Guillaume that he was going to post both the HRBP role and the EHS role for both Jana Washington, and De'Shandra. De'Shandra was identified by Mr. Dinh and Mr. Vono as the "Catcher" for all Human Resources transitional work.

26.     On or about July 14, 2016, De'Shandra's Ombudsmen Investigation that was opened up in April 2016 was being closed wherein the investigator validated in her findings that De'Shandra was incorrectly aligned, and that De'Shandra should have directly reported to the Power Services leadership on October 1, 2015. The investigator stated that she would request an immediate alignment change in an attempt to "clean up this mess that has been caused from not staying consistent" and stated she would be reaching out to Wendy Race and Dennis Healy to take these actions.

27.    On or about August 9, 2016, Ms. Race aligned De'Shandra to Kimberlee Guillaume as De'Shandra's new leader under Power Services.

28.    On or about August 2016, Mr. Dinh and Jim Vono reached out to Wendy Race regarding posting the HRBP role since it would be a conflict of interest if De'Shandra posted her own role. However, Mr. Dinh kept receiving the runaround from Ms. Race and ultimately Ms. Race never posted the role.

29.    On or about October 4, 2016, De'Shandra advised Ms. Guillaume that she believed Ms. Guillaume tactics too constantly force De'Shandra to deal with Mr. DuFort as if he were still De'Shandra's manager was unacceptable because she was aware of the tension, and the complaints that have been filed. Ms. Guillaume immediately denied knowledge of anything regarding issues between Mr. DuFort and De'Shandra. However, Ms. Guillaume's alleged lack of knowledge is false.

30.    On or about November 1, 2016, De'Shandra, along with other minority leadership, expressed concerns via email to Ms. Guillaume regarding her behavior towards minorities.

31.    On or about November 10, 2016, De'Shandra and Ms. Guillaume met in person wherein De'Shandra identified to Ms. Guillaume several examples of the hostile work environment including but not limited to the excessive monitoring, setting De'Shandra up for failure, misinformation and direction.

32.    On or about November 6, 2016, De'Shandra sent a certified letter to GE's CEO, and Board Members regarding the discriminatory practices that were

occurring at the Jacintoport site by the white leadership. It should be noted that the employees at that site were 90% minorities.

33.     On or about November 11, 2016, Mr. DuFort started coming over to De'Shandra's client group and telling the employees that he was the new HRM for Power Services.

34.     On or about November 22, 2017, Joe Hart in a staff meeting announced that Mr. DuFort would probably have the new Power Services HR role.

35.     On or about December 7, 2016, Ms. Race came to De'Shandra's office and gave her a "WARN" notification that De'Shandra's last day of "working" with GE would be February 3, 2017.   De'Shandra told her that she didn't understand and this was completely unexpected. Ms. Race then proceeded to inform De'Shandra that she was being laid-off because De'Shandra complained to too many people and that De'Shandra's role and responsibilities would be given directly to Mr. DuFort.

**CAUSES OF ACTION**

36.     Plaintiff hereby incorporate all facts stated in the preceding paragraphs as if set forth fully herein.

**Race/Color, Sex Discrimination and Retaliation under Section 1981 and Title VII**

37.     Defendant has intentionally discriminated against Plaintiff in violation of Section 1981 and Title VII based on sex (Female), race (African-American), and color (Black), engaged in a hostile work environment based on sex, race and color, did not promote Plaintiff, and terminated Plaintiff due to her sex, race and color and in retaliation against Plaintiff for her opposition to such

unlawful practices.

### DAMAGES

38.    Plaintiff seeks actual damages, including but not limited to lost wages and benefits.

39.    As a result of Defendant's intentional, discriminatory and unlawful acts described above, Plaintiff has suffered and continues to suffer actual damages and compensatory damages including but not limited to mental anguish, humiliation, emotional distress and damage to her professional reputation, all to her detriment and compensable at law.  Plaintiff also sues for the recovery of punitive damages as authorized by statute.

40.    Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this action for preliminary and permanent injunction is the only available means of securing adequate relief.  Plaintiff presently suffers and will continue to suffer irreparable injuries from Defendant's policies, practices, customs, and usages set forth herein.

41.    The effect, purpose and intent of the policies and practices pursued by Defendant has been and continues to be to limit, classify, and willfully discriminate against employees on the basis of their race and color and otherwise adversely effect their status as employees because of same.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court advance this cause on the docket, order a speedy trial at the earliest practicable date and cause this case in every way to be expedited and upon such hearing to:

i.      Grant Plaintiff a preliminary and permanent injunction enjoining Defendant, its agents and employees and those acts from continuing to maintain the policies, practices, customs or usages which discriminate against Plaintiff because of race and color, retaliate against Plaintiff or otherwise deprive Plaintiff of her rights and privileges secured by Federal Law.

ii.     Grant Plaintiff a declaratory judgment that the practices, policies, customs and usages complained of herein are violative of her rights protected by Section 1981 and Title VII.

iii.    Order the Defendant to grant Plaintiff additional equitable, actual and compensatory relief, requiring said Defendant to make Plaintiff whole, including but not limited to promotions, back pay and front pay including all accrued interest, insurance benefits, pension benefits, bonuses, vacation benefits, sick leave, and other incidental benefits that attach to and were incidental to Plaintiff's employment with Defendant and incidental to each such position sought by Plaintiff, as authorized by statute.

iv.     Order the Defendant to grant Plaintiff compensatory damages.

v.      Order the Defendant to pay punitive damages.

vi.     Order front pay for Plaintiff, who has been discharged, in lieu of reinstatement, if reinstatement is not feasible.

vii.    Grant an Order restraining Defendant from any retaliation against Plaintiff for participation in any form in this action.

viii.   Grant Plaintiff her costs incurred herein, and as part of such costs, reasonable Attorneys' fees and Expert witness fees and such further, additional or

alternative relief and affirmative action orders as may appear equitable and just.

Respectfully submitted,

By: /S/ Ashok Bail
     ASHOK BAIL
     STATE BAR #24043541
     3120 Southwest Freeway, Suite 450
     Houston, Texas 77098
     (832) 216-6693 (Tel)
     (832) 263-0616 (Fax)
     ashok@baillawfirm.com